### 44967. ROGERS v. THE STATE.
(361 SE2d 814)

CLARKE, Presiding Justice.

Rogers' conviction of the murder of Harry Justus resulted in the imposition of a sentence of life in prison.[1] Rogers enumerates five errors dealing with questions of alleged newly discovered evidence, the availability of materials in the state's file, the charge on the rule of sequestration and the court's regulation of cross-examination. A review of the grounds of appeal reveals no error and we affirm.

The evidence indicates that the defendant and Jerry Sanders sought out the victim for the purpose of buying "something to smoke." When the two found Justus, he joined them in their quest to "pick up some smoke," but their visit to several locations proved to be fruitless. The threesome apparently abandoned the original purpose of their travels when Rogers asked the other two to help him pick up a boat motor at an isolated spot on the river. Justus accompanied Rogers to the supposed location of the motor while Sanders waited near the truck. Sanders testified he heard two shots within several seconds of each other and that Rogers returned carrying a pistol, but without Justus. When Sanders asked Rogers where Justus was, Rogers replied that Justus would never "take nothing or tell nothing on me or none of my friends anymore." He further told Sanders to keep his mouth shut and, in fact, at one of their stops on the way back to Sanders' trailer, gave Sanders money to "help you keep your mouth shut about this."

At the Sanders' trailer, they joined a number of other people. Sanders drank until he passed out. The next day he found Rogers' gun under a seat cushion at the trailer and asked his wife to hide it.

When Justus' body was found by two fishermen, he was lying on his back having been shot in the neck and head. After some investigation, officers arrested Sanders and charged him with murder. When Sanders had his wife give the gun to the authorities, they established that at least one of the bullets found in the body of Justus was fired from this revolver. The indictment of Sanders for murder was fol-

---

[1] The crime occurred on March 4, 1983. The appellant was indicted November 10, 1983. A verdict of guilty was returned on May 24, 1985, following a jury trial, and appellant was sentenced to life imprisonment on the same day. Appellant's motion for new trial and first amended motion for new trial were overruled May 14, 1987. The transcript was certified on August 12, 1987, and docketed in this court on August 17, 1987. The case was argued October 14, 1987.

lowed by denials of guilt and finally a plea of guilty to voluntary manslaughter and an agreement from Sanders to assist in the investigation and possible prosecution of Rogers. Ultimately Rogers was tried and convicted of murder.

1. Applying the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we conclude the evidence supports the jury's verdict of guilty.

2. Rogers assigns error to the trial court and says it abused its discretion in denying his motion for a new trial because of alleged newly discovered evidence. He relies on two items of evidence which we treat separately.

a. Dr. Larry Howard, Director of the State Crime Laboratory, testified for the prosecution telling of two bullet wounds and expressing an opinion as to the likely sequence of the wounds and the likely time lapse between the shots. The defense also offered the testimony of pathologists which varied in some respects from that of Dr. Howard, particularly as regards the sequence and time intervals of the wounds.

At the hearing on his motion for new trial, Rogers offered in evidence an affidavit of another pathologist who stated he had reviewed the various reports and the transcript of the trial and disputed the testimony of the state's witness concerning the position of the victim when he was shot and expressed an opinion that the injury to the head did not necessarily occur at the scene where the body was found. The affidavit further expressed criticism of the autopsy procedure and some of the conclusions reached by the state's expert.

The issue is whether the testimony of Dr. Joseph Burton, whose affidavit was offered at the hearing on the motion for new trial, constitutes such newly discovered evidence as is necessary to demand a new trial. This court established a concise standard for granting a new trial on the grounds of newly discovered evidence in the case of *Timberlake v. State*, 246 Ga. 488 (271 SE2d 792) (1980). The six prongs of that standard are as follows: "(1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness." We find that the alleged new evidence in the form of the testimony of Dr. Burton does not satisfy the standards enunciated in *Timberlake v. State*, supra.

b. Rogers also points to the affidavit of Jimmy Armour who stated he played pool with the victim in a bar on the night the victim died. He recounted that the victim was still in the bar when he left at

about 6:15 to 6:30 p.m. and that the bar is some 28.8 miles from the location where the victim's body was found.

Rogers contends the testimony of Armour conflicts with the state's evidence that Justus was dead at the place where he was found at the same time Armour was playing pool with him twenty-seven miles away. He also infers that Rogers was at Sanders' trailer before dark and that sunset on the date involved was at 6:35 p.m.

Here also the standard to be applied is that which was announced in *Timberlake v. State,* supra. In applying this standard, we do not find that the affidavit of Armour meets all of its requirements so as to demand a new trial.

3. Rogers enumerates as error the trial court's refusal to examine the state's file and require exculpatory statements to be turned over to defense counsel. The statements which appellant contends should have been handed over are a statement of Jerry Sanders in which he admitted that there had been some domestic violence between his wife and himself and a statement of Randy Worley concerning whether the victim had been drinking on the night of the murder. These statements were not requested in the *Brady* motion made by appellant.

In regard to information not specifically requested in a motion pursuant to *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), a prosecutor's nondisclosure of evidence may impair a defendant's right to a fair trial only if the evidence not disclosed is material in the sense that it might create in the minds of the jurors a reasonable doubt that did not otherwise exist. *United States v. Agurs,* 427 U. S. 97 (96 SC 2392, 49 LE2d 342) (1976). In *United States v. Bagley,* 473 U. S. 667 (105 SC 3375, 87 LE2d 481) (1985), the following test of materiality as refined in *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), was adopted for the failure of the prosecutor to disclose favorable evidence pursuant to no request, a general request, or a specific request for evidence by the accused: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* supra at 682.

We find that the statements of Jerry Sanders and Randy Worley were not material in the sense that there was a reasonable probability that the disclosure of these statements could have caused a different outcome in the trial of the appellant.

4. Appellant complains that the court erred in charging the jury on the rule of sequestration. Dr. Anderson, who had testified and been excused from subpoena, discussed his testimony with Dr. Smith, who was called by the state as a rebuttal witness. The court charged

as to a violation of the rule of sequestration and that if the jury found there had been a violation the jury could consider this in weighing the testimony of witnesses. Appellant insists that since Dr. Anderson had been excused, the rule no longer applied to him. We find no error in the court's charge. The purpose of the rule as set forth in OCGA § 24-9-61 is to prevent a witness who has testified from influencing the witness who has not. Whether the witness has been excused after testifying is of no relevance to his duty to refrain from discussing his testimony with another witness.

5. The court did not err in refusing to allow appellant to cross-examine Dr. Larry Howard about the reversal of cases in which he had testified. The court indicated that this line of questioning would require Dr. Howard to speculate as to what was in the minds of the justices who decided the cases. There was no error in the court's allowing Dr. Howard to answer the state's question as to why Dr. Anderson was no longer a medical examiner.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 18, 1987.

*H. Bradford Morris, Jr.*, for appellant.

*Andrew C. Fuller, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General*, for appellee.