## S91P0984. BLACK v. THE STATE.

(410 SE2d 740)

Clarke, Chief Justice.

Robert Leonard Black was convicted by a jury in Banks County of murder and several other offenses, including aggravated assault, and sentenced to death.[1]

Shortly before noon on August 20, 1987, the defendant entered the victim's kitchen as she and her two children were preparing to leave. According to the two children, the defendant, nervous and perspiring, demanded a glass of water and the use of their telephone. The victim's daughter left the room. When she re-entered sometime later, the defendant and the victim were struggling and the defendant had a handgun. The defendant ordered the daughter outside to see if anyone was coming. When she returned, the victim told her to "run, baby, run," and the daughter fled the home. The son had been watching television in an adjacent room. Disturbed by the noise, he approached the kitchen to find the defendant holding the victim with one arm, with a gun in his other hand. A shot was fired, and the victim collapsed with the defendant on top of her. The defendant began hitting the victim in the head with the gun. When the son said something to the defendant, he turned and fired a shot at the child. The son fled the house.

Outside, two repairmen drove up in a white truck. The children told them what was happening, and they left to call for help. At some point (just when is not clear) two persons drove up in a red vehicle. The first law enforcement officer arrived just as this vehicle was leaving. This officer went to the house, where he heard sounds of a scuffle

---

[1] The crime occurred on August 20, 1987. The defendant was arrested the same day. The trial began on June 7, 1988 and ended June 10, 1988. The defendant's motion for new trial was filed June 21, 1988, heard on May 9, 1989, and denied August 29, 1989. The case was originally docketed in this court on November 1, 1989, but was removed from the docket and redocketed on April 18, 1991. After extensions of time were granted, the case was argued orally on September 9, 1991.

and the victim calling the defendant's name. Another shot was fired inside the home, and then it "got pretty quiet."

The sheriff arrived, along with the victim's father. After some period of negotiation, the defendant agreed to surrender. But when the sheriff approached the door of the house, the defendant shot, narrowly missing him. The GBI was summoned. After further attempts at negotiation, tear gas canisters were fired into the house. Two agents entered. Stepping over debris scattered throughout the hallway, they attempted to locate the defendant. As they neared the bathroom, the defendant fired his final shot at the officers. They returned fire, but missed the defendant, who was lying down with wet cloths around his face to counter the effects of the tear gas. The officers retreated to a safe position and heard what they thought was the defendant reloading his gun. In fact, the defendant was out of ammunition, and had dropped the spent casings to the floor, and then replaced them into the gun.

Finally, after further negotiations, the defendant agreed to surrender to his brother, and was arrested.

According to the defendant's testimony, he got into a struggle with the victim because he thought she was part of a conspiracy to kill him. He had made a trip to Waycross a few days earlier, where a cocaine dealer "fronted" him a quantity of cocaine to bring to north Georgia and sell. The defendant described how he and others consumed much of this cocaine over the next several days. According to him, he became increasingly fearful that some of the people he was consuming cocaine with were friends with his wife (who had earlier been responsible for the revocation of his probation), and planned to kill him and take his cocaine. His fear was such that he had spent at least one night in the woods prior to the day of the crime. Nevertheless, he accepted a ride that day with one of these people. Becoming suspicious once again, he left and walked to the victim's house, intending to borrow the telephone and call his brother for a ride home.

The defendant testified that the victim, whom he did not immediately recognize, acted as if she knew him and offered to give him a ride. They shared some of the cocaine he had with him. However, when she mentioned knowing the defendant's wife, he again grew suspicious, believing that she was not going to give him a ride and was stalling for time until his attackers could arrive. When he told her he was leaving, she brandished a gun and told him to stay. However, when she returned the gun to her purse, he seized the purse and withdrew the gun. During the ensuing struggle, the gun accidentally discharged twice.

A toxicology report confirmed the presence of a significant quantity of cocaine in the victim's bloodstream.

Viewing the evidence in the light most favorable to the state, we

conclude a rational trier of fact could find beyond a reasonable doubt that the defendant was guilty of murder. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Immediately upon his arrest, the defendant retained attorney Walter Harvey to represent him.[2] Harvey instructed the defendant not to talk to the police about the crime. Then he listened to the defendant's story about what had happened, including the defendant's belief that the victim was part of a conspiracy to kill him. After attempting to verify the existence of such a conspiracy, Harvey, whose undergraduate degree was in psychology, concluded that the defendant was a paranoid schizophrenic. He planned to present an insanity defense and scheduled an evaluation by a psychiatrist. When the defendant, who believed himself to be sane, learned of Harvey's plan, he fired him. After contacting several attorneys about his case, the defendant retained the attorney who represented him at trial. This attorney filed a special plea of mental incompetence to stand trial, and persuaded the defendant to present an insanity defense at trial. Attorney Harvey testified for the defense at the competency trial and at the trial in the case-in-chief in support of the defendant's claims of incompetence to stand trial and insanity at the time of the crime.

Harvey testified about his consultations with the defendant, the story the defendant told him about how the crime occurred, and his conclusions about the defendant's mental condition.

In the first division of his brief, the defendant contends the prosecutor impermissibly questioned the defendant about the latter's exercise of his constitutional rights to counsel and to remain silent, and impermissibly commented about these issues during closing arguments.

(a) *Right to silence.* In *Wainwright v. Greenfield,* 474 U. S. 284 (106 SC 634, 88 LE2d 623) (1986), the United States Supreme Court held that it was improper to use the defendant's silence after receiving his *Miranda* warnings as evidence of his sanity. In our case, both at the competency trial and at the trial of the case-in-chief, there was brief questioning and brief comment by the prosecutor concerning the defendant's silence (to police) after being advised of his *Miranda* rights. If such had erroneously been allowed despite timely and proper objection, the case would have to be reversed unless the state could show that the error was harmless beyond a reasonable doubt. *Wainwright v. Greenfield,* supra; *Doyle v. Ohio* 426 U. S. 610 (96 SC 2240, 49 LE2d 91) (1976). However, in contrast to *Wainwright,* the defendant in this case did not object either to the introduction of evi-

---

[2] Harvey was retained with funds provided by the defendant's family.

dence of silence or to the prosecutor's comment on that evidence during closing argument.[3] Thus, the trial court was not put on notice about the defendant's objections, or given an opportunity to respond to the objections in a timely manner. See *Greer v. Miller*, 483 U. S. 756 (107 SC 3102, 97 LE2d 618) (1987) (where objection to improper comment sustained and jury given curative instructions, no *Doyle* violation occurs). Here, any possible claim of error was procedurally defaulted. *Hance v. Kemp*, 258 Ga. 649 (4) (373 SE2d 184) (1988).

(b) *Consultation with counsel.* The defendant objected to questions about fees and to questions about privileged conversations between the defendant and attorneys he consulted other than Harvey (who testified for the defendant and as to whom the privilege was waived). The trial court agreed with the defendant's objections, and the defendant made no further objections or motions as to these issues.

The defendant himself introduced evidence concerning his consultation with (and dismissal of) one of his attorneys. The defendant failed to object to the state's questioning about his attempts to retain other attorneys after dismissing his original attorney, and there is nothing further to review here, for reasons stated in subdivision (a) above.[4]

2. In the second division of his brief, the defendant complains about the competency hearing, contending that irrelevant and prejudicial information was presented to the competency jury. As the defendant contends, the issue at a competency trial is whether the defendant at the time of the trial is capable of understanding the nature and object of the proceedings against him and his own condition in reference to such proceedings, and is capable of rendering assistance to his attorney in the defense of his case. *Crawford v. State* 240 Ga. 321 (2) (240 SE2d 824) (1977). However, evidence is not inadmissible at such a hearing simply because it might also be relevant to the issue of guilt. Evidence may be relevant to more than one issue, and so long as it is sufficiently relevant and material to the issue of mental incompetence, it is properly admitted at a competency trial. *Brown v. State*, 256 Ga. 387 (349 SE2d 452) (1986).

There was no objection to most of the evidence and comment the defendant now complains about. Hence, these arguments are not preserved for review. The trial court did not err by sustaining the de-

---

[3] Greenfield failed to object to the introduction of the evidence, but timely objected to the comment. Under Florida law, this was sufficient to preserve the issue. *Wainwright v. Greenfield*, supra at 288.

[4] We note, however, that a defendant's invocation of his right to counsel, unlike his silence, may be relevant to and admissible on the question of sanity. See *Wainwright v. Greenfield*, supra, 474 U. S. at 296-301. (Rehnquist, J., concurring.)

fendant's objection and issuing curative instructions rather than granting the defendant's motion for mistrial when the prosecutor referred to the trial of the case-in-chief scheduled for the next day. *Sabel v. State,* 250 Ga. 640 (5) (300 SE2d 663) (1983).

3. There likewise was no objection at trial to the prosecutor's guilt-phase closing argument. Much of what he complains about now was not even objectionable; in any event, we do not find a reasonable probability that improper argument changed the result of the trial. *Ford v. State,* 255 Ga. 81, 90 (335 SE2d 567) (1985).

4. The competency trial and the trial of the case-in-chief were tried the same week. The two juries were selected from the same venire, except that those jurors selected for the competency trial were excused after the competency trial and were not a part of the trial-jury venire.

The law does not require independent venires from which to select competency and trial juries, and there was no challenge at trial to the procedure. We find no merit to the defendant's claim that the trial jury's knowledge of the previous hearing, coupled with certain comments by the state, led to confusion about the issue of insanity at the time of the crime.

5. The evidence supports the competency jury's determination that the defendant was competent to stand trial. Moreover, there is no merit to the defendant's contention, set out in the eighth division of his brief, that the state's psychological evaluation was inadequate.

6. In light of the minimal pre-trial publicity given this case and the low excusal rate for cause, there was no error in the denial of the defendant's motion for change of venue. *Lee v. State,* 258 Ga. 82 (9) (365 SE2d 99) (1988).

7. Whether or not to conduct individual sequestered voir dire is within the discretion of the trial court. *Curry v. State,* 255 Ga. 215 (2 a) (336 SE2d 762) (1985). Here, the defense agreed to the voir dire procedure followed by the court. There was no abuse of discretion.

8. The court's jury-qualification rulings were within the deference due the trial judge's determination. *Jefferson v. State,* 256 Ga. 821 (2) (353 SE2d 468) (1987); *Waters v. State,* 248 Ga. 355 (2) (283 SE2d 238) (1981).

9. Absent objection to competence, it was not error to allow a 12-year-old witness to testify without first determining the competence of the witness. *Redfield v. State,* 240 Ga. 460 (3) (241 SE2d 217) (1978); *Young v. State,* 122 Ga. 725 (1) (50 SE 996) (1905). See OCGA § 24-9-5 (as amended after date of this trial — child witness competent to testify as witness to "any crime" and credibility will be determined pursuant to Article 4 of the Chapter (§ 24-9-80 et seq.)).

10. The defendant contends the court should have granted his motion for directed verdict on count six of the indictment charging

him with the offense of possession of a firearm by a convicted felon. OCGA § 16-11-131. In reviewing the trial court's ruling,

> [T]he entire evidence is to be examined and the fact that the evidence at the close of the state's case may have been insufficient to convict is not controlling so long as all the evidence justifies the conviction under the appropriate standard. *Walls v. State*, 161 Ga. App. 625, 627 (1) (288 SE2d 769) (1982).

In this case, the defendant's testimony establishes the requisite prior felony conviction and the evidence supports the verdict. *Jackson v. Virginia*, supra.

11. The trial court's instructions on reasonable doubt were not erroneous, for reasons stated in *Potts v. State*, 261 Ga. 716 (14) (410 SE2d 89) (1991). Nor was the defendant entitled to an instruction on the lesser offense of involuntary manslaughter. *Binns v. State*, 258 Ga. 23 (2) (364 SE2d 871) (1988). There was no unlawful charge on intent. *Isaacs v. State*, 259 Ga. 717 (35 A) (386 SE2d 316) (1989).

12. The evidence supports the defendant's conviction on the counts charging aggravated assault on law enforcement officers and cruelty to children. OCGA §§ 16-5-21 (c) and 16-5-70 (b). *Jackson v. Virginia*, supra.

13. The evidence supports the jury's determination that the defendant was sane at the time of the offense. *Brown v. State*, 250 Ga. 66 (2) (295 SE2d 727) (1982).

14. The defendant has failed to show that error, if any, in the exclusion of a written memorandum submitted by attorney Harvey to the state's psychologist was harmful, where the psychologist did not testify at trial, see OCGA § 24-3-4, and where it is not clear that the memorandum was offered as a prior consistent statement by Mr. Harvey. See *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985).

15. There was no error in the admission in evidence of photographs of the crime scene. *Hicks v. State*, 256 Ga. 715 (13) (352 SE2d 762) (1987).

16. There was no violation of the rule of sequestration. *Childs v. State*, 257 Ga. 243 (11) (357 SE2d 48) (1987); *Tift v. State*, 133 Ga. App. 455 (1) (211 SE2d 409) (1974).

17. There was no improper introduction of hearsay testimony over timely objection. Nor do we reach the defendant's claims of prosecutorial misconduct. *Spencer v. State*, 260 Ga. 640 (9) (398 SE2d 179) (1990).

18. In Division 18 of his brief, the defendant contends the jury's sentencing-phase verdict is insufficient as a matter of law. We agree. We have consistently held that the § b (7) aggravating circum-

stance has two parts. First, the murder must be "outrageously or wantonly vile, horrible or inhuman." See OCGA § 17-10-30 (b) (7). Second, the offense of murder must involve either torture, depravity of mind, or an aggravated battery to the victim (or a combination of these three elements). *Hance v. State*, 245 Ga. 856, 861-863 (268 SE2d 339) (1980); *West v. State*, 252 Ga. 156, 161 (Appendix) (313 SE2d 67) (1984).

Here, as in *Patrick v. State*, 247 Ga. 168, 169 (274 SE2d 570) (1981), "there was no finding by the jury that the murder was 'outrageously or wantonly vile, horrible or inhuman.'" The jury's verdict completely omitted any portion of the first part of the § b (7) circumstance, and there is thus no finding relative to an essential element of the § b (7) aggravating circumstance.[5] In a death penalty case, the jury must set forth in writing the statutory aggravating circumstances it has found beyond a reasonable doubt. OCGA § 17-10-30 (c). "This written finding must show the jury's intent 'with sufficient clarity that this court can rationally review the jury's findings.' *Romine v. State*, 251 Ga. 208, 213 (305 SE2d 93) (1983)." *Page v. State*, 256 Ga. 191, 194 (7) (345 SE2d 600) (1986). A verdict which completely omits an essential element of a statutory aggravating circumstance does not suffice as a finding of that statutory aggravating circumstance. Since only the § b (7) circumstance supported the imposition of a death sentence in this case, the defendant's death sentence may not stand. *Patrick v. State*, supra. Compare *Godfrey v. Georgia*, 446 U. S. 420, 426-427 (100 SC 1759, 64 LE2d 398) (1980) (noting that Godfrey's jury had failed to make any finding relative to the second part of the § b (7) circumstance); *Housel v. State*, 257 Ga. 115, 122 (355 SE2d 651) (1987) (upholding § b (7) finding where jury was returned to the jury room for further deliberation after returning an initial verdict omitting any reference to the first part of § b (7); final verdict was a sufficient § b (7) finding).

19. The defendant contends that at the hearing on his motion for new trial he stated his desire to raise an issue of ineffectiveness of trial counsel, but that he was dissuaded from doing so by the trial court, the district attorney, and his newly-appointed post-conviction attorney, none of whom were familiar with our holding in *Thompson v. State*, 257 Ga. 386, 388 (359 SE2d 664) (1987), that

> [a]ny ineffective [assistance of] counsel challenge will be deemed waived if the new attorney files an amended motion for new trial and does not raise the issue before the trial

---

[5] The jury's verdict was "We, the jury, recommend that the death penalty be imposed, and we find the following statutory aggravating circumstance: Torture[;] Aggravated Battery."

court so that the challenge can be heard at the earliest practicable moment, i.e., during the hearing on the amended motion.

The defendant contends that in the circumstances of this case, he did not waive the issue, and the case should be remanded for a hearing on the issue. The state has not responded to this contention. Since the case will be remanded for resentencing in any event, we will defer the determination of the issue of waiver to the proceedings on remand.[6] See *Gary v. State*, 260 Ga. 38 (2) (389 SE2d 218) (1990).

20. The conviction is affirmed. The sentence is reversed and the case remanded for resentencing. Since the evidence is sufficient to support a proper § b (7) finding, the state may seek anew the death penalty. *Page v. State*, 257 Ga. 538 (361 SE2d 153) (1987).

*Judgment affirmed in part, reversed and remanded in part. All the Justices concur.*

DECIDED DECEMBER 4, 1991 —
RECONSIDERATION DENIED DECEMBER 18, 1991.

*David C. Jones, Jr.,* for appellant.

*Timothy G. Madison, District Attorney, Deborah S. Wilbanks, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Mary H. Hines, Staff Attorney,* for appellee.

---

[6] The record indicates that the trial court granted the defendant an additional 30 days to amend his motion for new trial to include a claim of ineffectiveness. It does not indicate why the defendant failed to do so.