## S96P1753. WALDRIP v. THE STATE.
(482 SE2d 299)

HINES, Justice.

Tommy Lee Waldrip was convicted of the malice murder of Keith Lloyd Evans as well as two counts of felony murder, kidnapping with bodily injury, aggravated battery, five counts of aggravated assault, theft by taking a motor vehicle, arson in the second degree, influencing a witness, concealing a death, possession of a firearm by a convicted felon, and two counts of possession of a firearm during commission of a felony.[1] The jury recommended the death penalty,

---

[1] The crimes occurred on April 13, 1991. Appellant was indicted during the February 1991 term of the Dawson County grand jury. The State gave its notice of intent to seek the death penalty on May 20, 1991. This Court granted interim review in this case, and rendered a decision on June 27, 1994. *Livingston v. State*, 264 Ga. 402, 407 (444 SE2d 748) (1994). Appellant filed a special plea of incompetency, and a jury trial was held in September 1994 in Hall County, pursuant to a change of venue. The jury found appellant competent to stand trial on September 16, 1994. In accordance with his unopposed motion for change of venue, appellant was tried before a jury in Gwinnett County, and sentenced to death for malice murder on October 26, 1994. The trial court also sentenced appellant on count 3, kidnapping with bodily injury, to life imprisonment; count 5, aggravated assault, to twenty years to run concurrent with count 3; count 10, theft by taking a motor vehicle, to twenty years to run concurrent with count 3; count 12, arson in the second degree, to ten years to run consecutive to count 3; count 13, influencing a witness, to five years to run consecutive

finding as aggravating circumstances that the murder was committed while the defendant was engaged in the commission of kidnapping with bodily injury or aggravated battery; and that the murder was outrageously wanton, vile, horrible and inhuman in that it involved aggravated battery to the victim. Waldrip appeals his convictions and death sentence. We affirm.

The jury was authorized to find that appellant murdered Keith Evans to prevent Evans from testifying against his son, John Mark Waldrip, at his armed robbery retrial in Forsyth County. Evans, who worked as a clerk in the store at the time of the robbery, testified as the State's sole eyewitness at John Mark's first trial in 1990. Although John Mark was convicted in the 1990 trial, the trial court granted his motion for new trial, and he was released on bond pending the retrial. At the time of his death, Evans was scheduled to testify at the retrial.

On Saturday afternoon, two days before the retrial was scheduled to begin, the appellant and his co-indictees, John Mark and appellant's brother-in-law, Howard Livingston,[2] drove to Cleveland, Georgia and bought a used station wagon for $150, which they returned a half hour later because it was overheating. That evening, John Mark called Robert Garner,[3] who was also scheduled to testify against him at the retrial, and threatened to harm Garner if he testified. At approximately 9:30 p.m. appellant and John Mark left appellant's apartment in appellant's wife's Ford Tempo. Sometime between 10:30 p.m. and midnight, the co-indictees met Evans at a highway crossing in Dawson County. After running Evans' truck off the road, they shot at him through the windshield. He was hit with birdshot from a shotgun in the face and neck. Since Evans was still alive, the co-indictees drove his truck, with Evans in the passenger seat, to Hugh Stowers Road in Dawson County, where they beat him to death

---

to count 12; count 14, concealing a death, to twelve months to run concurrent with count 3; count 16, possession of a firearm by a convicted felon, to five years to run concurrent with count 3; count 19, possession of a firearm during commission of a felony, to five years, to run consecutive to count 13; count 20, possession of a firearm during commission of a felony, to five years to run concurrent with count 19. The felony murder convictions stand vacated by operation of law under OCGA § 16-1-7. Appellant filed a motion for new trial on November 16, 1994, and an amended motion for new trial on September 1, 1995, which was denied on November 28, 1995. Appellant filed a notice of appeal on December 4, 1995. The case was docketed in this Court on July 30, 1996 and was orally argued on October 22, 1996.

[2] Following appellant's convictions, John Mark and Livingston were convicted in separate trials. John Mark's conviction and life sentence were affirmed on direct appeal. See *Waldrip v. State*, 266 Ga. 874, 880 (3) (471 SE2d 857) (1996). Livingston also received a life sentence. His appeal is pending in this Court.

[3] Garner, who drove the car during the armed robbery, did not testify at John Mark's 1990 armed robbery trial. Shortly before the retrial was scheduled to begin, Garner gave a statement to police implicating himself and John Mark in the armed robbery and agreed to testify against John Mark.

with a blackjack. They buried Evans' body in a shallow grave in Gilmer County and set his truck on fire.

The fire was reported at approximately 12:30 a.m. Sunday morning. A current insurance card for the Ford Tempo, belonging to appellant's wife, Linda Waldrip, was found near the burned truck. Appellant was interviewed on Sunday afternoon and denied any involvement in Evans' disappearance. During the interview, Linda Waldrip was asked for her insurance card for the Ford Tempo, and she produced an expired card.

John Mark's retrial for armed robbery did not take place. On Monday morning, Keith Evans was missing and Garner refused to testify against John Mark. Garner subsequently informed the district attorney of the threats made against him, and John Mark was arrested and charged with influencing a witness.

Appellant was arrested on Tuesday, and on Thursday, confessed to shooting and beating the victim and burning his truck. He then led authorities to the victim's body, and later, to the shotgun used in the crimes.[4] The following day, appellant gave a conflicting statement, in which he contended that John Mark and Livingston murdered the victim and burned his truck, and that he was merely a bystander. Appellant gave a third statement in which he related that all three of the co-indictees participated in the crimes.

The evidence was sufficient to enable a rational trier of fact to find appellant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

### Competency Trial

Appellant raises seven claims of error relating to his competency trial.

1. The trial court did not abuse its discretion in denying appellant's second motion for change of venue in the competency trial, based on appellant's contention that the change of venue from Dawson County to Hall County was insufficient to avoid excessive pretrial publicity. Appellant has not attempted to show there is a substantial likelihood the competency trial was rendered unfair due to pretrial publicity, nor has he established prejudice by individual jurors. *Jones v. State,* 261 Ga. 665 (409 SE2d 642) (1991). As support for this ground, appellant states only that two jurors on the trial jury had read newspaper articles about the trial, and cites to five on the

---

[4] According to this statement, appellant was responsible for all of the crimes against the victim, John Mark was let out of the car and left prior to the shooting, and Livingston, although present, was merely a bystander.

jury panel who were familiar with the case without any further explanation. Our review of the record reveals that neither of the jurors on the trial jury had any clear recollection of what they had read, and both jurors stated they did not have any fixed opinion regarding appellant's competency, and appellant has failed to show a high excusal rate in general as a result of publicity. See, e.g., *Chancey v. State*, 256 Ga. 415, 429 (349 SE2d 717) (1986). The fact that the parties originally stipulated to venue in a county other than Hall[5] does not relieve appellant from showing he was prejudiced by the trial court's denial of his motion. This claim is without merit.

2. The trial court did not abuse its broad discretion in limiting the scope of the voir dire at the competency trial by prohibiting questions of a technical or legal nature, or questions which required the jurors to prejudge the case. *McGinnis v. State*, 258 Ga. 673, 674-675 (3) (372 SE2d 804) (1988).

3. Appellant's contention that the State improperly placed his character in issue during the competency trial by referring to his prior criminal history is without merit. "[T]he issue at a competency trial is whether the defendant at the time of the trial is capable of understanding the nature and object of the proceedings against him and his own condition in reference to such proceedings, and is capable of rendering assistance to his attorney in the defense of his case." *Black v. State*, 261 Ga. 791, 794 (2) (410 SE2d 740) (1991). Since a competency trial is in the nature of a civil proceeding, evidence that may place appellant's character in issue is admissible, if it is relevant to the issues to be decided. Id.

The evidence of prior crimes committed by appellant was offered to counter expert testimony that appellant harbored the delusional belief he was being monitored by law enforcement officers, and also to show appellant's familiarity with the criminal justice system. There was no reference to the facts of these prior offenses, and no testimony by the victims or witnesses of these crimes. We have found such evidence to be admissible to show whether a defendant understood the charges against him. *Brown v. State*, 256 Ga. 387, 389 (349 SE2d 452) (1986).[6] Compare *Crawford v. State*, 240 Ga. 321, 326 (2) (240 SE2d 824) (1977). Given the limitations imposed by the trial

---

[5] The original motion was made in 1991. Appellant's competency trial was held in 1995.

[6] Appellant relies on *Brown v. State* for his contention that evidence of prior crimes committed by the defendant is per se inadmissible during a competency trial. In *Brown*, the trial court permitted the victims of prior crimes to testify in order to show that the defendant understood the charges against him. 256 Ga. at 388-389. In affirming the trial court's ruling, we distinguished the case from *Crawford v. State*, 240 Ga. 321 (240 SE2d 824) (1977), noting that in *Brown*, evidence of the prior crimes was relevant to the issues at the competency trial, and there was no evidence presented regarding the crimes for which the defendant was presently charged. Id.

court and the purpose for which the convictions were offered, we find no error.

4. Appellant's contention that the prosecutor misled the jury at the competency trial by asking appellant's former attorney why she delayed notifying the trial court that appellant required psychiatric treatment has not been preserved for appellate review because appellant failed to renew his motion for mistrial after the trial court issued a curative instruction. *Woodham v. State*, 263 Ga. 580 (1) (b), (3) (439 SE2d 471) (1993).

5. Appellant's contention that the trial court should have sua sponte rebuked the prosecutor and issued a curative instruction under OCGA § 17-8-75, when the psychologist who conducted the court-ordered examination referred to himself as the "judge's witness" during the competency trial, is without merit. Even assuming appellant's failure to object did not constitute waiver of this issue, the witness explained that under this Court's opinion in *Tolbert v. State*, 260 Ga. 527, 528 (1) (b) (397 SE2d 439) (1990), he was required to be independent and impartial.

6. Appellant contends that the trial court erred by repeatedly allowing the State to refer to the pending charges against him at the competency trial. See Division 3, supra. Whether appellant understood the nature and gravity of the charges against him was highly relevant to the competency proceeding. *Black v. State*, 261 Ga. at 794. The prosecutor's questions were focused on appellant's understanding of the charges, not his guilt or innocence, or the facts of these or any prior crimes, and the jury was properly charged on its duty on the special plea of incompetency. See *Brown v. State*, 256 Ga. at 388-389; *Chambers v. State*, 250 Ga. 856, 858-859 (1) (302 SE2d 86) (1983). We find no error.

7. Appellant's contention that the prosecutor improperly commented on his exercise of his Fifth and Sixth Amendment rights during the competency trial is procedurally defaulted, based on his failure to object to these comments. *Earnest v. State*, 262 Ga. 494 (422 SE2d 188) (1992).

## Voir Dire

8. Appellant contends that the trial court committed reversible error in failing to excuse prospective jurors Larue Davis, Perry Gant, and Margaret Lynch because of bias.

(a) Appellant argues that Davis should have been excused under *Wainwright v. Witt*, 469 U. S. 412, 424-426 (105 SC 844, 83 LE2d 841) (1985), because she stated repeatedly that she considered the death penalty to be appropriate punishment for a defendant convicted of murder and could not think of any mitigating circumstances which

would change her mind. In fact, the prosecutor objected to appellant's question asking Davis whether she could think of mitigating circumstances, and the objection, which was valid, was sustained by the trial court. A prospective juror's inability to recite circumstances which might lead her to vote for a life sentence is not dispositive of her qualifications to serve as a juror. See *Crowe v. State,* 265 Ga. 582, 588 (9) (a) (458 SE2d 799) (1995). Although Davis initially stated that she would vote for death under certain circumstances, she stated that she would put her own feelings aside and follow the court's instructions. Davis stated that she felt "confident" she would not arbitrarily vote to impose the death penalty and would consider the evidence presented in accordance with the trial court's instructions. She consistently responded that she would weigh evidence in mitigation and consider seriously the option of a life sentence. See *Hittson v. State,* 264 Ga. 682, 687-688 (6) (h) (449 SE2d 586) (1994).

It is the "final distillation" of the prospective juror's thoughts, and not isolated responses, which determine whether the juror meets the *Witt* standard. *Taylor v. State,* 261 Ga. 287, 291-292 (5) (404 SE2d 255) (1991); *Spivey v. State,* 253 Ga. 187, 197, n. 3 (319 SE2d 420) (1984). Davis' voir dire responses, reviewed in their entirety, support the trial court's finding that Davis was qualified to serve as a juror and failure to excuse her was not an abuse of discretion. *Ledford v. State,* 264 Ga. 60, 64 (6) (b) (439 SE2d 917) (1994).

(b) Appellant contends that Davis' misunderstanding of his parole eligibility[7] impaired her ability to serve as a juror, thus mandating her disqualification. See, e.g., *Burgess v. State,* 264 Ga. 777, 780 (3) (450 SE2d 680) (1994). Davis' responses to repeated questioning on this issue by both the trial court and appellant, indicated that the possibility of parole was not an overriding concern which would lead her to automatically vote for death upon conviction. In fact, Davis acknowledged that a defendant might be rehabilitated, and she consistently stated that she could set aside her views and follow the trial court's instructions. *Ledford,* supra.

(c) Although prospective juror Gant opined that the length of the State's witness list indicated that appellant was probably guilty, his responses to questions intended to clarify this attitude support the trial court's conclusion that this assumption did not reflect a fixed opinion which could not be changed by the evidence at trial. See *Foster v. State,* 258 Ga. 736, 737 (1) (374 SE2d 188) (1988); *Childs v.*

---

[7] In response to the trial court's question asking whether she could impose the death penalty, Davis stated that if a defendant was "guilty without a shadow of a doubt" and had no remorse, she could vote for death, because she did not think that the victim's family should have to worry about him being released on parole after serving part of his life sentence.

*State,* 257 Ga. 243, 250 (8) (357 SE2d 48) (1987). The trial court's finding that Gant was qualified is consistent with the general rule that a juror who merely leans one way or another, before hearing any evidence, is not subject to disqualification. *Jarrell v. State,* 261 Ga. 880, 881-882 (1) (413 SE2d 710) (1992). Although Gant initially stated that he would not make a very good juror, a juror's doubt as to his own impartiality does not demand as a matter of law that he be excused for cause. *Greenway v. State,* 207 Ga. App. 511, 513 (3) (428 SE2d 415) (1993). In finding Gant qualified to serve, the trial court relied in large part on Gant's demeanor, noting that Gant's assurances of his ability to follow the court's instructions and decide the case solely on the evidence were immediate and unequivocal. The trial court's finding in this regard should be accorded deference by this Court, and, after reviewing his voir dire as a whole, we find no abuse of discretion in qualifying Gant. *Ledford v. State,* 264 Ga. at 65.

(d) Prospective juror Lynch initially stated that the death penalty was appropriate for murder committed with anger, hatred, or premeditation; however, Lynch later stated, in response to specific questions, that even when these factors were present, she would consider evidence in mitigation and the option of a life sentence. *Foster v. State,* 258 Ga. at 737. Lynch's responses, viewed in their entirety, support the trial court's conclusion that she was qualified to serve as a juror. *Ledford v. State,* 264 Ga. at 64.

9. Appellant contends that the trial court improperly restricted voir dire because he was not permitted to ask prospective jurors about their understanding of the meaning of a life sentence. Voir dire on this issue is generally not permitted, since a prospective juror's views on this subject are extraneous to the ability to serve. *Burgess v. State,* 264 Ga. at 780. Even if appellant had been permitted to identify jurors like Davis, who were concerned about the possibility of parole, disqualification would not be automatic, since it would still have to be shown that the jurors' views would not permit them to consider evidence in mitigation or the option of a life sentence. *Wainwright v. Witt,* 469 U. S. at 424-426.

The scope of voir dire and the propriety of the particular questions asked should be left to the sound discretion of the trial court. *Spencer v. State,* 260 Ga. 640, 641 (1) (d) (398 SE2d 179) (1990). The extensive voir dire lasted eight days, and the questions permitted by the trial court were sufficient to permit the discovery of bias or prejudice held by any prospective juror. *Thornton v. State,* 264 Ga. 563, 573 (13) (c) (449 SE2d 98) (1994); *Curry v. State,* 255 Ga. 215, 217-218 (2) (b) (336 SE2d 762) (1985).

## Guilt Phase

10. Appellant argues that the trial court erred in admitting hearsay testimony by Robert Garner and Thomas Hitchcock under the exception to the hearsay rule for the statements of a co-conspirator. See OCGA § 24-3-5; *Denison v. State*, 258 Ga. 690, 691 (1) (373 SE2d 503) (1988).

The State presented evidence at trial that on Saturday evening before the victim's murder, John Mark called Robert Garner at the Forsyth County jail[8] and threatened him with harm if he testified at John Mark's armed robbery retrial. At the time of the call, John Mark was at appellant's apartment. Garner testified that John Mark interrupted the conversation because appellant was talking to him, indicating that appellant was present when the threats were made.

Hitchcock testified that a week before John Mark's retrial was scheduled to begin, John Mark telephoned him at the Forsyth County jail and asked Hitchcock to notify him when Garner arrived at the jail. Hitchcock stated that he called John Mark several times that week at appellant's residence.

(a) Appellant contends that the State failed to make a prima facie case that a conspiracy existed to kill Evans. Under OCGA § 24-3-5,[9] the State must make a prima facie showing of the existence of the conspiracy, without regard to the declarations of the co-conspirator, in order to admit his out-of-court declarations. *Copeland v. State*, 266 Ga. 664, 665 (2) (a) (469 SE2d 672) (1996). The trial judge may admit testimony by co-conspirators before the conspiracy has been proved, provided its existence is ultimately shown at trial. *Waldrip v. State*, 266 Ga. 874, 880 (3) (471 SE2d 857) (1996).

The trial court admitted the hearsay testimony by Hitchcock and Garner based on the prosecutor's representation that the State would be introducing appellant's statement, which had already been ruled admissible, at a later point in the trial. The statement, which revealed that the co-indictees were together prior to the murder and participated in the murder, satisfied the requirement of a prima facie case without regard to the hearsay testimony itself. See, e.g., *Jones v. State*, 265 Ga. 84, 85 (2) (453 SE2d 716) (1995); *Duffy v. State*, 262 Ga. 249, 250 (1) (416 SE2d 734) (1992).

(b) Appellant argues that even if he conspired to kill Evans, there was no evidence that he was involved in any conspiracy against

---

[8] Garner, who was incarcerated elsewhere, had been brought to the Forsyth County jail to await testifying at John Mark's retrial. ·

[9] OCGA § 24-3-5 provides: "After the fact of conspiracy is proved, the declarations by one of the conspirators during the pendency of the criminal project shall be admissible against all."

Garner, since it was John Mark who was charged with the crime of attempting to influence Garner. It is unnecessary to prove an express agreement between the parties in order to find the existence of a conspiracy. *Duffy v. State*, 262 Ga. at 250; *Drane v. State*, 265 Ga. 255, 257-258 (4) (455 SE2d 27) (1995). The essence of conspiracy is a common design, and conduct which discloses a common design may give rise to an inference of conspiracy. *Drane* at 257-258. Evidence of a violation of a different statute does not create separate conspiracies, since the character and effect of a conspiracy are not to be judged by dismembering it and viewing separate parts but by looking at it as a whole. Thus, even if one conspirator acts separately from the others to achieve a common goal, his acts will be imputed to the others, without a new agreement directed to that particular act. See, e.g., *Bruce v. State*, 263 Ga. 273, 274-275 (5) (430 SE2d 745) (1993).

The jury could have inferred, from the evidence adduced at trial, that the common design of the co-indictees was to prevent John Mark from being convicted for armed robbery by eliminating material witnesses who would testify against him. Since this would not be accomplished by eliminating only Evans, the conspiracy encompassed John Mark's threats against Garner.

(c) Appellant contends that admission of John Mark's out-of-court statements violated his Sixth Amendment right to confrontation, citing *Dutton v. Evans*, 400 U. S. 74, 88-89 (91 SC 210, 27 LE2d 213) (1970) (plurality opinion). Georgia law allows for the admission of declarations by a co-conspirator against the other co-conspirators during the pendency and the concealment phases of criminal activity.[10] Because the common-law rule does not extend to statements made during the concealment phase, the United States Supreme Court has required that certain indicia of reliability be present in each case where such statements are admitted. Id. However, John Mark's statements were made during the pendency of the conspiracy, not during the concealment phase. Compare *Copeland v. State*, 266 Ga. at 665. Therefore, his statements are admissible both under Georgia law and under the common-law rule, and the statements are presumed to be sufficiently reliable to satisfy the Confrontation Clause's requirement of trustworthiness. *Bourjaily v. United States*, 483 U. S. 171, 183 (107 SC 2775, 97 LE2d 144) (1987). There is no need to make an independent inquiry into the reliability of a statement "when the evidence 'falls within a firmly rooted hearsay exception.'" Id., quoting *Ohio v. Roberts*, 448 U. S. 56 (100 SC 2531, 65 LE2d 597) (1980). Under the circumstances of this case, the hearsay at issue did not violate the Confrontation Clause.

---

[10] OCGA § 24-3-5; see also *Chatterton v. State*, 221 Ga. 424 (144 SE2d 726) (1965).

(d) Appellant's contention that testimony by a law enforcement officer, regarding a jailhouse conversation he overheard between appellant and John Mark, was inadmissible as the statement of a co-conspirator, because the conspiracy was terminated after appellant led police to the victim's body, has not been preserved for review. Appellant expressly waived objection to this testimony at trial. See, e.g., *Waldrip v. State*, 266 Ga. at 879-880. Moreover, a conspiracy does not necessarily end simply because one of the conspirators has been arrested and confesses, if the conspiracy to conceal the identity of one of the perpetrators is ongoing. OCGA § 24-3-5; *Bundrage v. State*, 265 Ga. 813 (2) (462 SE2d 719) (1995). The substance of the conversation between appellant and his son, John Mark, indicates that they were still concealing the son's involvement in the crimes.

11. Appellant argues that the State improperly placed his character in issue by eliciting testimony from Officer Steve Hawkes that appellant was arrested two days after the victim's disappearance for violating his probation on a prior unrelated offense. Evidence which incidentally puts character in issue may be admitted if otherwise relevant. *Hayes v. State*, 265 Ga. 1, 3 (4) (453 SE2d 11) (1995). Hawkes' testimony was relevant for two reasons: to show that appellant made an admission during the ride to the jail, by asking Hawkes whether his arrest was related to John Mark's arrest in Dawson County, and also, to explain the reason for appellant's arrest, in as much as appellant was never released prior to being charged with the crimes against the victim. Testimony explaining the reason for appellant's arrest need not be excluded simply because it incidentally shows the commission of another crime. Id. The arresting officer did not mention the nature of the previous offense, and even if he had, the jury was already aware of appellant's prior burglary conviction, which served as the basis for the charge of possession of a firearm by a convicted felon. *Roberts v. State*, 212 Ga. App. 607, 608 (2) (443 SE2d 4) (1994).

12. Appellant's contention that the trial court erred by allowing the State to read into the record the victim's testimony, given at John Mark's armed robbery trial, because the testimony was hearsay, not falling under any exception to the rule, is waived since he failed to object on this ground at trial. *White v. State*, 255 Ga. 210, 213 (3) (336 SE2d 777) (1985). Even assuming the issue was preserved for review, testimony is considered hearsay only if the witness is testifying to the declarant's out-of-court statements to prove the truth of the statements. *Trotter v. State*, 216 Ga. App. 612, 613 (1) (455 SE2d 121) (1995). The victim's former testimony was admitted for the purpose of showing the motive for the crimes against him, and not to prove that John Mark committed the armed robbery. OCGA § 24-3-2; *Rogers v. State*, 224 Ga. 436, 437-438 (1) (162 SE2d 411) (1968).

13. Appellant contends that venue in Dawson County was improper for the crime of concealing the death of another, since the victim was buried in Gilmer County. According to appellant's statement, the victim died in Dawson County as a result of the beating inflicted by the co-indictees and was then transported in his truck to Gilmer County for burial. The place of burial is not dispositive of venue, since the crime of concealing Evans' body could also have occurred in the vehicle traveling from Dawson County to Gilmer County. See, e.g., *Addison v. State*, 265 Ga. 657 (461 SE2d 227) (1995). Under OCGA § 17-2-2 (e), venue for a crime involving a vehicle may lie in any county through which the vehicle traveled. In the absence of conflicting evidence, appellant's statement was sufficient to establish venue in either Dawson County or Gilmer County beyond a reasonable doubt. *Minter v. State*, 258 Ga. 629, 630 (1) (373 SE2d 359) (1988).

14. As appellant concedes, the question of whether the instruction on voluntary intoxication was burden-shifting has been decided adversely to him. *Bright v. State*, 265 Ga. 265, 277-278 (3) (455 SE2d 37) (1995).

15. The trial court did not err in admitting autopsy photographs of the victim's body, since the photographs showed aggravated battery in conjunction with the aggravating circumstances in OCGA § 17-10-30 (b) (2) & (7). The two autopsy photographs were cropped to show only those injuries which did not become apparent until the autopsy. *Carr v. State*, 265 Ga. 477 (1) (457 SE2d 559) (1995); *Thornton v. State*, 264 Ga. at 571. The photographs were not duplicative, and the medical examiner testified outside the presence of the jury, identifying the photographs which would be helpful to illustrate his testimony regarding the cause and manner of death. Id. The photographs showing the victim's body at the crime scene were also admissible. *Battles v. State*, 262 Ga. 415, 418 (7) (420 SE2d 303) (1992).

16. Appellant's contention that one of his two felony murder convictions is improper is moot, since the felony murder convictions stand vacated by operation of OCGA § 16-1-7. See *Malcolm v. State*, 263 Ga. 369, 373 (434 SE2d 479) (1993). Moreover, his claim that the conviction is improper because the underlying felony of possession of a firearm by a convicted felon is a status felony which is not inherently dangerous, is without merit, since the possession charge was material to the victim's murder. *Chapman v. State*, 266 Ga. 356, 357-358 (2) (467 SE2d 497) (1996); *Roller v. State*, 265 Ga. 213, 214 (2) (453 SE2d 740) (1995); compare *Ford v. State*, 262 Ga. 602, 603-604 (423 SE2d 255) (1992).

17. The State did not violate *Brady v. Maryland*[11] by failing to disclose GBI reports containing statements by appellant's son, Paul Waldrip, and the results of lie detector tests administered to Paul. Appellant contends that the reports were material evidence, which could have been used to impeach law enforcement officials by showing that Paul Waldrip was once a suspect in the victim's murder, tending to prove that Paul Waldrip was the third party at the crime scene rather than the appellant.

For purposes of a *Brady* claim, " 'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Rogers v. State*, 257 Ga. 590, 592 (3) (361 SE2d 814) (1987). The polygraph results are inadmissible, without stipulation by the parties, and we find no merit in appellant's contention that the results of the examinations could have potentially led to the discovery of exculpatory information. Id. *Walker v. State*, 264 Ga. 79, 80 (2) (440 SE2d 637) (1994). See also *Wood v. Bartholomew*, 516 U. S. ___ (116 SC 7, 133 LE2d 1) (1995).

The reports containing Paul's statements do not show that Paul Waldrip had the motive, or opportunity, or was implicated in the crimes by evidence gathered during the police investigation. If appellant believed otherwise, he could have subpoenaed Paul to testify as a witness. Considering the polygraph results and Paul's statements in the context of the entire record, we conclude there is no reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense prior to trial. *Kyles v. Whitley*, 514 U. S. ___ (115 SC 1555, 131 LE2d 490) (1995); see *Wood v. Bartholomew*, 116 SC at 7.

18. The trial court did not err in admitting into evidence an expired automobile insurance card belonging to appellant's wife, Linda, under the "independent source" exception to the exclusionary rule. See *Nix v. Williams*, 467 U. S. 431 (104 SC 2501, 81 LE2d 377) (1984); *Barnett v. State*, 204 Ga. App. 491, 494 (1) (420 SE2d 43) (1992). Linda Waldrip's current insurance card for her Ford Tempo was found at one of the crime scenes, leading the GBI to interview Linda and the appellant. During the interview, the agent asked Linda for her insurance card for the Tempo, and she produced an expired card. This expired card was subsequently seized in an illegal search of the vehicle.

The admissibility of the card under the "independent source" exception depends on whether authorities established probable cause to seize the card, either before or after the illegal search, independent

---

[11] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

of any facts revealed by the unlawful search. *Murray v. United States*, 487 U. S. 533 (108 SC 2529, 101 LE2d 472) (1988); *Johnson v. State*, 221 Ga. App. 266, 267 (471 SE2d 58) (1996). Since authorities had knowledge of the expired card's existence prior to the illegal search and probable cause to seize it, the card was properly admitted by the trial court. The fact that the agent chose not to seize the card during the first interview does not affect its admissibility.

19. The trial court did not err in denying appellant's request for additional funds to pay the defense psychologist in the absence of any contention that appellant was denied adequate assistance by this expert. See *Jarrells v. State*, 258 Ga. 833, 838 (15) (375 SE2d 842) (1989).

### Penalty Phase

20. There is no merit to appellant's assertion that the trial court's ruling on an objection made by the prosecutor constituted an improper comment on appellant's failure to testify. The rule prohibiting expressions of opinion by the trial court as to what has or has not been proved does not extend to colloquies between judge and counsel regarding the admission of evidence. OCGA § 17-8-57; *Adams v. State*, 264 Ga. 71, 76 (7) (440 SE2d 639) (1994). Moreover, appellant's failure to object to this remark or move for a mistrial constitutes waiver of this issue under OCGA § 17-8-57. *Crowe v. State*, 265 Ga. at 594.

21. Appellant's contention that the trial court erred in admitting copies of his prior guilty pleas in aggravation during the sentencing phase of the trial is without merit for the following reasons:

(a) Appellant received sufficient notice of the State's intention to introduce his prior convictions. OCGA § 17-10-2 (a); *Ross v. State*, 254 Ga. 22 (5) (a) (326 SE2d 194) (1985).

(b) Copies of the documents relating to these guilty pleas contained sufficient indicia of voluntariness on their face to justify their admission. *Hammond v. State*, 260 Ga. 591, 598 (7) (398 SE2d 168) (1990); *Pope v. State*, 256 Ga. 195, 209 (17) (345 SE2d 831) (1986).

(c) Any erroneous statement by the prosecutor regarding the burden of proof required for introduction of the guilty pleas was cured by the trial court's instruction that the burden of showing that the pleas were knowing and voluntary rests with the State. *Pope v. State* at 209 (17).

22. The portion of the prosecutor's argument relating to a prior burglary committed by appellant was based on facts in evidence, since the argument tracked information contained in the indictments of appellant's prior convictions for burglary and criminal trespass which were admitted into evidence in aggravation of punishment.

*Alexander v. State*, 263 Ga. 474 (435 SE2d 187) (1993).

23. The aggravating circumstances found in OCGA § 17-10-30 (b) (2) & (7) may both be found by a jury within the same case involving the same victim and facts. *Drane v. State*, 265 Ga. at 259; *Lonchar v. State*, 258 Ga. 447, 453 (6) (369 SE2d 749) (1988). Aggravating circumstances are not invalid simply because they may overlap to some extent. *Crowe v. State*, 265 Ga. at 582-583.

24. The evidence supports the jury's finding that the murder was committed while the appellant was engaged in the commission of kidnapping with bodily injury or aggravated battery, OCGA § 17-10-30 (b) (2); and that the murder was outrageously wanton, vile, horrible, and inhuman in that it involved aggravated battery to the victim, OCGA § 17-10-30 (b) (7). OCGA § 17-10-35 (c) (2).

## Death Penalty Issues

25. Appellant argues that his death sentence is disproportionate to the life sentences received by his two co-indictees[12] because there is no supportable version of the facts under which he is the most culpable, and because of his age, history of non-violent behavior, and severe mental illness. OCGA § 17-10-35 (c) (3).

Appellant's contention that he was merely an abettor is not supported by the evidence, which shows he actively conspired to plan, execute, and conceal an exceptionally brutal crime. Although we have held that the death sentence is disproportionate when a defendant is clearly not the "prime mover" in the crime, in this case there is no certainty on that issue, since appellant gave conflicting versions of the crime to authorities. Compare *Hall v. State*, 241 Ga. 252, 258-259 (8) (244 SE2d 833) (1978). The jury was authorized to decide whether to believe appellant's first statement in which he claimed responsibility for all of the crimes against the victim, or his second statement that John Mark and Livingston committed the crimes against the victim and he was merely present at the scene, or any combination thereof. See, e.g., *Walker v. State*, 264 Ga. 676, 677 (1) (449 SE2d 845) (1994). The fact that there were conflicts in appellant's first statement does not, as appellant contends, prove the truth of his second and exculpatory statement. The only evidence in the record showing John Mark to be more directly involved than appellant is appellant's own statement to law enforcement agencies, and his statements alone do not persuasively establish that a single individual commit-

---

[12] The State initially sought the death penalty against both John Mark Waldrip and Howard Livingston. The jury recommended sentencing John Mark to life imprisonment, and the State subsequently withdrew its request for the death penalty against Livingston, who also received a sentence of life imprisonment.

ted the murder. See *Lee v. State*, 258 Ga. 82, 86-87 (10) (365 SE2d 99) (1988).

Appellant contends that under the State's theory of the case, John Mark Waldrip had the motive and incentive to kill Evans, and therefore appellant and Livingston at most aided and abetted. The State's theory, which is consistent with evidence presented by appellant that he would go to any length to protect John Mark, including confessing to a murder he did not commit, was that appellant was capable of participating in the murder of the victim to save John Mark from going to prison.

Finally, this is not a case in which the aider and abettor received a death sentence, and the principal was acquitted, or even allowed to plead guilty to a lesser offense. See, e.g., *White v. State*, 257 Ga. 236 (356 SE2d 875) (1987). Compare *Harrison v. State*, 257 Ga. 528, 531 (3) (361 SE2d 149) (1987). The State also sought the death penalty against John Mark, but the jury recommended life imprisonment. That different juries hearing different evidence might arrive at different punishment does not establish a claim of disproportionality. *Crowe v. State*, 265 Ga. at 595. We do not find that appellant's sentence was disproportionate to his co-indictees' sentences, nor is appellant's death sentence disproportionate to the sentence imposed in comparable cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). See Division 27, infra, and the Appendix to this opinion.

26. The death sentence was not imposed as a consequence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1).

27. The similar cases listed in the Appendix support the imposition of a death sentence in this case. OCGA § 17-10-35 (c) (3).

*Judgments affirmed. All the Justices concur.*

### APPENDIX.

*Hittson v. State*, 264 Ga. 682 (449 SE2d 586) (1994); *Black v. State*, 261 Ga. 791 (410 SE2d 740) (1991); *Hall v. State*, 261 Ga. 778 (415 SE2d 158) (1991); *Todd v. State*, 261 Ga. 766 (410 SE2d 725) (1991); *Conklin v. State*, 254 Ga. 558 (331 SE2d 532) (1985); *West v. State*, 252 Ga. 156 (313 SE2d 67) (1984); *Cervi v. State*, 248 Ga. 325 (282 SE2d 629) (1981); *Stanley v. State*, 240 Ga. 341 (241 SE2d 173) (1977).

DECIDED MARCH 10, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997.

*J. Richardson Brannon, Charlotta Norby,* for appellant.
*Lydia J. Sartain, District Attorney, Lee Darragh, Assistant Dis-*

754

*trict Attorney, Michael J. Bowers, Attorney General, Wesley S. Horney, Assistant Attorney General,* for appellee.