## A03A0534. SMITH v. THE STATE.
### (583 SE2d 914)

BARNES, Judge.

Following the denial of his amended motion for new trial, Romio Smith a/k/a DeNorris Smith appeals his jury convictions for hijacking a motor vehicle, two counts of aggravated assault, two counts of possession of a firearm during the commission of a crime, and battery. Smith asserts the trial court erred in denying his request to strike for cause a juror who had been the victim of a violent crime, limiting the examination of a witness regarding prior inconsistent statements, the denial of his request to recall a witness,

---

not allowing a co-defendant to testify about his plea negotiations, and ineffective assistance of counsel. Following review, we affirm.

On appeal, the evidence must be viewed in a light most favorable to the verdict, and Smith no longer enjoys the presumption of innocence. *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998). So construed, the evidence reveals that the two victims were high school students and friends. On the night of March 17, 2001, the two girls went to the Waffle House on Six Flags Drive. When they arrived, the restaurant was very crowded, so the girls decided to leave. As they were leaving, three men jumped into the back seat of their car and told the girls, "Y'all whores going with us, y'all bitches ain't going nowhere." The man sitting behind the driver, who was identified as Smith, put a gun to the driver's head and hit her in the face with the weapon. When the driver jumped out of the car, Smith got into the driver's seat and drove down the road a short distance, but the passenger pulled the keys from the ignition and threw them out of the car. Smith got out of the car and started running away. The passenger flagged down a passing patrol car and told the police about the incident. The police spotted Smith running down Six Flags Drive, and he was arrested shortly thereafter. Police recovered the gun from a nearby dumpster after a witness reported that she saw Smith discard it.

1. Smith first contends that the trial court erred in denying his motion to strike for cause a juror who had been the victim of a violent crime. During voir dire the juror indicated that almost 30 years ago her father and ex-husband had, at different times, pulled a gun on her. Upon further questioning, she was asked if the emotional burden caused by the crime would affect her consideration of the case before her. She responded that,

> Not if they have some proof that he did it. I mean, I would have to — I would have to feel that there was enough proof that the person did it. I know I'm sympathetic to women. I grew up in a very abusive home with my father. I had a couple of sisters like that, too, but they're deceased. But I — my own personal feelings, in this case, I would rather not do it, because I'm not sure of myself. You know, I mean, I would want to see it, I would want to hear the proof, I would want to know within my own self that there was not a shred of doubt. I wouldn't want to say somebody did something that they really didn't do.

When asked if despite her feelings she could decide the case on the facts and the law, she stated, "Well yeah, especially what the judge would say, that the order or whatever, however they do a jury. I

don't know. I've never been on a jury. Emotionally, for me, I would rather not do it, because it is an emotional thing. It does scar the rest of your life. The emotion is always there." But she then reiterated, "I would have to hear everything so that there would be no doubt that somebody did it. I mean you'd have to prove it to me." Smith then moved to strike for cause, which the court denied.

Absent proof of a manifest abuse of discretion, a trial court's refusal to strike a juror for cause will not be disturbed. *Greene v. State*, 268 Ga. 47, 50 (485 SE2d 741) (1997). Moreover, a trial court is not obligated to strike a juror for cause in every instance where the potential juror expresses doubts about his or her impartiality or reservations about his or her ability to set aside personal experiences. *Waldrip v. State*, 267 Ga. 739, 745 (8) (c) (482 SE2d 299) (1997). "The fact that a potential juror may have some doubt as to his impartiality, or complete freedom from all bias, does not demand, as a matter of law[,] that the juror be excused for cause." (Citation and punctuation omitted.) *Wilson v. State*, 220 Ga. App. 487, 488 (1) (469 SE2d 516) (1996).

We ascertain no abuse of discretion in this case. Although the juror expressed some reservations about her ability to be impartial and desire to be impaneled, she testified that she could render a decision based on the evidence. In fact, her indication that she would convict only if every shred of doubt were removed would, in fact, be advantageous to Smith. Before a juror must be disqualified for cause, it must be shown that her opinion "is so fixed and definite that [she] will be unable to set the opinion aside and decide the case based upon the evidence." (Punctuation omitted.) *Whatley v. State*, 270 Ga. 296, 298 (2) (509 SE2d 45) (1998). Accordingly, in this case, the trial court did not abuse its discretion in refusing to strike the juror for cause.

2. Smith complains that the trial court erred in not allowing him to properly examine a witness "with regard to impeachment and prior contradictory statements."

Smith called former co-defendant Winston McCray as a defense witness and gave no indication that the witness was adverse or hostile. On direct, Smith questioned McCray about the events of the evening and released him. Smith then said he had one more question, and asked, "You were arrested in this case, as well, right?" When McCray responded affirmatively, Smith continued, "And, as a matter of fact, you and 'Q' and Romio were all arrested. And you were indicted in this case. The State made you an offer — ." The court interrupted and told counsel to ask questions. Smith asked McCray how his case was resolved, and McCray responded that he had pled out. Smith then questioned McCray about any plea offer he had with the State and whether he was required to testify against Smith as part of the offer. The State asked to approach and objected to Smith

attempting to impeach his own nonhostile witness in an attempt to get certified convictions admitted. The court responded that it would not allow testimony of how each of the co-defendants' cases was disposed into evidence.

Smith continued his direct examination, during which McCray made no statements that contradicted any prior statements. He testified that Smith hit the victim and was not asked about a gun. During cross-examination, McCray admitted that he lied to police and again during the probable cause hearing when he said that Smith did not hit the victim with a gun. During a bench conference on redirect, Smith told the trial court that McCray had made a prior contradictory statement and apparently intended to impeach his witness with this prior statement. The trial court responded that Smith was not surprised by the statements, because he had the plea transcripts. "You knew exactly what he said at the time of his plea." Smith did not respond, and continued questioning McCray thoroughly about his agreement to plead guilty in exchange for 12 months probation and credit for time served. Smith then tendered a certified copy of the plea, which the trial court admitted without objection.

"A party may not impeach a witness voluntarily called by him, except where he can show to the court that he has been entrapped by said witness by a previous contradictory statement." (Citation and punctuation omitted.) *Paradise v. State*, 212 Ga. App. 166, 169 (3) (441 SE2d 497) (1994). The Supreme Court of Georgia has removed the requirements of surprise and prejudice from the element of entrapment in OCGA § 24-9-81, only requiring as a "threshold matter a showing that the witness made a statement inconsistent with the witness's testimony at trial." *Jones v. State*, 270 Ga. 25, 27 (3) (505 SE2d 749) (1998). The evidence established that McCray made a prior inconsistent statement, and Smith was entitled to impeach him with evidence of this statement.

Notwithstanding the trial court's incorrect ruling regarding the prior inconsistent statement, however, we discern no harmful error. McCray was thoroughly questioned by Smith and the State regarding his prior inconsistent statements, and the trial court admitted into evidence a certified copy of McCray's conviction. Further, although evidence of prior inconsistent statements is admissible as substantive evidence, *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982), Smith at no time tendered the prior statements as evidence, but merely cross-examined McCray about them. Finally, the trial court did not err in failing to declare McCray a hostile witness and allowing Smith to ask leading questions, because Smith never asked the court to declare the witness hostile while he was on the stand.

3. In a related enumeration, Smith maintains that the trial court erred by refusing to allow him to recall McCray on the second day of trial as a hostile witness and cross-examine him about his prior written inconsistent statement. The trial court denied the motion finding that Smith had presented the evidence the day before. "[The jury] know[s] that he has made prior inconsistent statements. . . . You went into the deal that he made. You went into it all. I'm not going to let you recall him unless you can show me something new. All that is already in there."

"The recalling of a witness for further examination at the instance of either party is always within the discretion of the trial judge. [Cit.]" *Money v. State*, 137 Ga. App. 779, 780 (3) (224 SE2d 783) (1976). Because the record reflects that Smith thoroughly questioned McCray regarding his prior statement and his plea agreement, we do not find the court manifestly abused its discretion, and any possible error in denying the request to recall McCray for cross-examination as a hostile witness was harmless.

4. Smith also contends that the trial court erred by refusing to allow evidence of McCray's plea negotiation and subsequent agreement with the State. The evidence belies this contention, however, because the transcript reveals that Smith was allowed to fully explore McCray's plea negotiation.

During the direct examination of McCray, the following exchange occurred:

Smith: How was [your] case disposed of?
McCray: Pled out.
Smith: And how was that plea offer made?
McCray: It was made by the D.A., I think, and my lawyer.
Smith: And as part of that plea offer did the D.A. require anything of you?
McCray: Yea, that I testify against Romio.

And then again upon redirect:

Smith: What kind of agreement did you make with the District Attorney?
McCray: That I would plead out to criminal trespass and obstructing an officer, and I've got to go back to school. I got to come and testify against Romio.
Smith: What did you receive in exchange for that agreement?
McCray: What did I receive?
Smith: In exchange for that agreement. What did you receive?

McCray: I got twelve months' probation, and credit for time served.
Smith: Now, without that agreement, do you know what you were exposed to?
McCray: Ten to twenty years for hijacking and kidnapping.

Notably, McCray was subpoenaed by Smith, not the State. The defendant in a criminal trial is guaranteed

the right to cross-examine a key state's witness concerning pending criminal charges against the witness. It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness. Whether or not such a deal existed is not crucial. What counts is whether the witness may be shading his testimony in an effort to please the prosecution.

(Citation and punctuation omitted.) *State v. Vogleson*, 275 Ga. 637, 638-639 (1) (571 SE2d 752) (2002). Here, we need not decide whether, as Smith argues, this right extends to a defense witness, because the record reflects that the trial court allowed Smith to question McCray thoroughly regarding his plea agreement with the State. We find no error.

5.

To establish ineffectiveness, a defendant must prove that trial counsel's performance was deficient and but for the deficiency a reasonable probability existed that the result of the trial would have been different. An error by counsel, even if professionally unreasonable, does not warrant reversal of a criminal conviction if it had no effect on the judgment.

(Citations omitted.) *Mathis v. State*, 238 Ga. App. 218, 221-222 (6) (517 SE2d 578) (1999). The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous. *Smith v. State*, 256 Ga. 483 (351 SE2d 641) (1986).

(a) Smith first argues that trial counsel was ineffective for not objecting earlier to the State's leading questions upon direct examination of one of its witnesses. At the motion for new trial hearing, trial counsel responded that he allowed excessive leading with this witness, one of the victims, because he "thought it was much less effective for the State to simply get simple answers from her as in,

'Yeah' as opposed to allowing her to give long answers to questions that came from her own voice, her own narrative." Decisions as to whether to interpose certain objections fall within the realm of trial tactics and strategy and usually provide no basis for reversal of a conviction. *Herndon v. State*, 235 Ga. App. 258, 259 (509 SE2d 142) (1998). "Counsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel. [Cits.]" *Scott v. State*, 238 Ga. App. 258, 260 (2) (518 SE2d 468) (1999).

Further, Smith does not show how allowing the State to ask the witness leading questions actually prejudiced his case, given that the same facts testified to by that witness were testified to by other witnesses. Smith had to show that there was a reasonable probability the jury would have reached a different verdict absent the alleged error of counsel. See *Concepcion v. State*, 205 Ga. App. 138, 139 (421 SE2d 554) (1992). This he did not do.

(b) Smith also asserts that trial counsel was ineffective for waiving a motion to suppress an out-of-court identification. Prior to trial, Smith moved to suppress an out-of-court showup identification of Smith. Smith withdrew the motion upon the guilty plea of the two co-defendants. At the motion for new trial hearing, trial counsel testified that he waived the motion to suppress after the two co-defendants were convicted because "the State had legally admissible evidence that would bring the same identification testimony in through the co-defendants, who were now going to be testifying or potentially testifying as witnesses. In other words, I thought it was basically a [moot] motion."

"[S]trategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." (Citation and punctuation omitted.) *Austin v. Carter*, 248 Ga. 775, 779 (2) (c) (285 SE2d 542) (1982). "Whether an attorney's trial tactics are reasonable 'is a question of law,' not fact." (Citation omitted.) *Jefferson v. Zant*, 263 Ga. 316, 318 (3) (a) (431 SE2d 110) (1993). The trial court concluded that trial counsel's decision to withdraw the motion to suppress the identification when the co-defendants pled guilty was a reasonable trial strategy because the co-defendants could identify the defendant if they testified. We ascertain no error in the trial court's determination. *Smith v. State*, supra, 256 Ga. 483.

(c) Smith next asserts that trial counsel was ineffective for failing to "object or lay the proper foundation for the admission of testimony related to the finding of a gun by the police dog." We note that Smith neglects to delineate the purported error by reference to the record as is required by Court of Appeals Rule 27. "We have repeatedly held that it is not the function of this court to cull the record on behalf of a party." (Punctuation omitted.) *Rolleston v. Cherry*, 226 Ga. App. 750, 753 (1) (b) (487 SE2d 354) (1997). That notwithstanding, as

the trial court noted, the gun itself was not admitted during this testimony. When the officer identified the gun as the one his dog had found, it had already been admitted into evidence during the earlier testimony of one of the victims.

At the motion for new trial hearing, trial counsel testified that he did not object to testimony about the canine finding the gun, because the testimony was not being offered "as to the substance or identification" of the gun and that the dog's identification did not associate the gun with his client. Failure to make a meritless objection cannot be evidence of ineffective assistance of counsel. *Demetrios v. State*, 246 Ga. App. 506, 514 (7) (b) (541 SE2d 83) (2000).

(d) Smith lastly contends that trial counsel was ineffective for failing to request a speedy trial on the initial indictment. The evidence shows that the State reindicted Smith after two charges were left off the initial indictment. After Smith was reindicted, he filed a speedy trial demand on November 28, 2001, which was amended on December 13, 2001, and was tried within the next term of court following the demand. See OCGA § 17-7-171. At the motion for new trial hearing, trial counsel testified that Smith wanted to go to trial as quickly as possible but he advised him on several occasions that because of the seriousness of the charges he should not request a speedy trial. He testified that he advised Smith against seeking a speedy trial because it could severely hamper plea negotiations because the trial is expedited. He also testified that although he filed the request for a speedy trial after the second indictment, he had Smith sign a statement that it was against his advice. He further testified that Smith did not really push for the speedy trial until after the second indictment which was filed on September 21, 2001. Trial counsel testified that he subsequently filed a demand for speedy trial per Smith's instruction. Smith testified that in May 2001, before he was charged under the second indictment, he decided he did not want to pursue a plea and told his trial counsel at that time that he wanted a speedy trial.

Smith does not contend that the delay from the time of his arrest in February 2001, until his trial began on January 14, 2002, violated his right under the Sixth Amendment of the United States Constitution, so we need not analyze his speedy trial claim under the four factors set forth in *Barker v. Wingo*, 407 U. S. 514, 530 (92 SC 2182, 33 LE2d 101) (1972). He argues that trial counsel should have filed the speedy trial demand under the earlier less harmful indictment.

The trial court, however, was not required to believe that Smith asked his attorney to file a speedy trial demand before the second indictment. Further, because the record reflects that Smith was tried within the next term following his speedy trial demand on December 13, 2001, we discern no error.

A trial court's finding that a defendant has received effective assistance of counsel must be upheld unless it is clearly erroneous. *Samples v. State*, 234 Ga. App. 8, 10 (1) (b) (505 SE2d 813) (1998). Because Smith has not carried his burden of showing affirmatively by the record both that his lawyer's performance was deficient and that he was prejudiced by such deficiency, we must uphold the trial court's denial of Smith's motion for a new trial on the ground of ineffective assistance of counsel.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED JUNE 24, 2003.

*Bowens, Guerra & Yeager, Cindi L. Yeager*, for appellant.
*Patrick H. Head, District Attorney, Amy H. McChesney, H. Maddox Kilgore, Assistant District Attorneys*, for appellee.

