A11A1719. FARLEY v. THE STATE.

(725 SE2d 794)

PHIPPS, Presiding Judge.

A jury found Vinson Lloyd Farley guilty of terroristic act and aggravated stalking.[1] Farley appeals from his judgment of conviction and the denial of his motion for new trial, claiming that the trial court erred by (i) allowing hearsay testimony, (ii) limiting his cross-examination of a police officer, (iii) precluding him from recalling three of the state's witnesses during presentation of the defense's case-in-chief, and (iv) not giving the jury an instruction on admissions. Farley also contends that his trial counsel rendered ineffective assistance, and that the evidence was insufficient to support the jury's verdict.

---

[1] The jury also found Farley guilty of criminal attempt to commit arson in the first degree. The trial court merged this count into the crime of terroristic act for purposes of final disposition and sentencing.

The evidence showed that Farley and Regina Gipson (Gipson) lived together in Gipson's house. When they had been together about a year, their relationship took a turn for the worse. One evening, Farley threw a camera against the bedroom wall. Gipson asked Farley to move out of the house, but he refused and insisted on 30 days' notice. Gipson went to the courthouse and "put in an eviction notice." Farley then announced that he was going to divide their bed so that Gipson could sleep on one side and he could sleep on the other. To mark the proposed division, he took an industrial ladder out of the garage and attempted to place it on the bed. When Gipson got on the bed to stop him, Farley dropped the ladder on her.

On July 10, 2008, Gipson obtained a temporary protective order requiring Farley to leave the house, to stay away from the house, and to refrain from contacting or approaching her. The following day, around 12:27 p.m., a sheriff's deputy served Farley with the protective order. Farley acknowledged at trial that he had received the order and that he knew it prohibited him from returning to Gipson's house.

The same afternoon, after Farley was served with the protective order, Gipson's sister, Cassandra Gipson, her sister's boyfriend, Ezell Wharton, and her nephew, Deonte Gipson, went to her house to change the locks. Farley was not there. The three noticed a gas can outside the garage door and piles of wood and sticks in back of the house. Cassandra Gipson realized that it "wasn't normal." When Gipson got home, her sister and the others pointed out the "[b]utane and oil" in front of the house, which was not normally there, and she walked around the back and saw piles of wood, which was also out of the ordinary. Gipson testified that she had not noticed the butane and other material in front of the house, nor the piles of wood in the back yard, when she left the house that morning.

After Gipson, Cassandra Gipson, and Wharton went inside the house, Deonte Gipson went to the back yard to shoot his BB gun. Shortly thereafter, "on the corner of the house [he saw] the front tire of a bike ride up and stop." Deonte Gipson saw Farley, who did not see him, walk toward the front of the house. Deonte Gipson called Cassandra Gipson on his cell phone to alert her and the others inside to Farley's presence. Deonte Gipson then peered around the corner and saw Farley, "coming back around towards me, pouring gasoline on the house." Farley poured gasoline on the house, on "piles of trash," and then on the deck. When Farley pulled out a lighter, Deonte Gipson tackled Farley, and a "long fight" ensued.

Gipson called the police while Wharton went outside the house to help subdue Farley. Cassandra Gipson also went outside and moved the gasoline can to the back porch and away from the area where Deonte Gipson and Farley were fighting. She also saw a

lighter lying on the ground.

The responding officer arrived at the scene to find Wharton holding down Farley. The officer noticed a strong odor of gasoline around the house and on the wood piles. Cassandra Gipson approached the officer while he was handcuffing Farley, and she asked Farley why he had tried to kill her sister. Farley said, "I'm sorry. I f—ed up." She also asked Farley why he brought gasoline, and he responded that he did not bring the gasoline, which was at the house, and that "he poured most of the gasoline on the wooden deck behind the" house. According to Gipson, she owned the gas can, which held gasoline for the lawn mower.

The police called the fire department to the scene. According to a responding fireman, he could see and smell the gasoline on the back of the house and on the deck. He then sprayed "fuel buster" on the spill to neutralize it.

Farley testified in his defense. He denied placing piles of wood near the house or pouring gasoline. He acknowledged leaving and then returning to Gipson's property, but he contended that he went back to get his tools.

1. Farley claims that the evidence was insufficient to support his convictions. In reviewing this claim, we do not weigh the evidence or determine the credibility of witnesses, as "that is the function of the jury. Instead, we construe the evidence in the light most favorable to the verdict to determine whether it was sufficient to authorize a rational trier of fact to find [Farley] guilty of these offenses beyond a reasonable doubt."[2]

(a) Farley argues that the state failed to prove the elements of aggravated stalking. We disagree. OCGA § 16-5-91 (a) provides:

> A person commits the offense of aggravated stalking when such person, in violation of a . . . temporary protective order . . . follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

For purposes of stalking,

> the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a

---

[2] *Morgan v. State*, 277 Ga. App. 670, 671-672 (1) (627 SE2d 413) (2006) (footnote omitted).

member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.[3]

Here, Farley claims that the state failed to prove he engaged in a pattern of harassing and intimidating behavior directed at Gipson. Although a single violation of a protective order, in and of itself, does not amount to aggravated stalking,[4] the state does not have to show multiple violations of a protective order.[5] Rather, "[b]y its plain terms, OCGA § 16-5-91 prohibits even a single violation of a protective order, if that violation is . . . part of a pattern of harassing and intimidating behavior."[6] Accordingly,

> [i]n determining whether a defendant has exhibited such a pattern of behavior, the jury can consider a number of factors, including the prior history between the parties, the defendant's surreptitious conduct, as well as his overtly confrontational acts, and any attempts by the defendant to contact, communicate with, or control the victim indirectly, as through third parties.[7]

In this case, the evidence was sufficient to show a pattern of harassing and intimidating behavior by Farley directed at Gipson.[8] A trier of fact could conclude that Farley's behavior in throwing the camera in the bedroom and later dropping an industrial ladder on Gipson was both harassing and intimidating.[9] In addition, the jury could have found that it was Farley who had set out the piles of wood around Gipson's house. Farley was gone by the time Cassandra Gipson, Deonte Gipson, and Wharton arrived to change the locks. The three showed Gipson the piles of wood when she arrived. Farley later returned to the scene and tried to burn down the house while Gipson was inside. Two related instances of stalking behavior are

---

[3] OCGA § 16-5-90 (a) (1). See *State v. Burke*, 287 Ga. 377, 378 (695 SE2d 649) (2010) (the simple stalking statute defines "harassing and intimidating" for purposes of the entire article on stalking).

[4] Id.

[5] See *Louisyr v. State*, 307 Ga. App. 724, 729 (1) (706 SE2d 114) (2011).

[6] Id. at 729.

[7] Id. (footnote omitted).

[8] Unlike in *Burke*, supra, the record does not show that "the State specifically argued that it only had to prove [the defendant's] single violation of the . . . protective order in order for the jury to find him guilty of the crime charged." *Burke*, supra at 377. See *Herbert v. State*, 311 Ga. App. 396, 398, n. 3 (715 SE2d 795) (2011) (describing circumstances of *Burke* as "unique").

[9] See, e.g., *Hervey v. State*, 308 Ga. App. 290, 292 (707 SE2d 189) (2011) ("testimony about the repeated threats, coupled with the violation of the protective order, was sufficient evidence for the jury to find that [defendant's] behavior was harassing and intimidating") (citation omitted).

sufficient to show a pattern of harassing and intimidating behavior.[10] Accordingly, any rational trier of fact could have found beyond a reasonable doubt that Farley was guilty of aggravated stalking.

(b) The evidence was also sufficient to support Farley's conviction for terroristic act.[11] As applicable here, "[a] person commits the offense of a terroristic act when . . . [h]e or she releases any hazardous substance . . . for the purpose of terrorizing another."[12] Farley contends that the state failed to prove he poured gasoline, as opposed to another substance, around the house or on the wood piles. But Deonte Gipson testified that he saw Farley pouring gasoline on the house, and a firefighter with 23 years of experience confirmed that gasoline had been poured on the house. Any rational trier of fact could have found beyond a reasonable doubt that Farley was guilty of terroristic act.

2. Farley claims that the trial court erred in allowing a police officer to give hearsay testimony. We disagree.

On direct examination, the responding officer testified that he moved the gas can from the wooden deck and onto the grass. The prosecutor asked the officer why he moved the gas can. The officer began his answer by stating that he had poured out the gasoline after speaking with a "supervisor who advised —," but defense counsel objected on hearsay grounds as soon as the officer uttered the word "advised" and the officer did not complete his response. The trial court overruled Farley's objection, and the prosecutor again asked the officer why he moved the gas can. The officer responded, "I moved the gas can to pour out the leftover gasoline because the gas can was going into evidence and a combustible liquid cannot be stored in evidence." Since the officer never testified about what his supervisor told him, he did not give evidence that "rest[ed] mainly on the veracity and competency of other persons."[13] The correctness of the trial court's ruling on Farley's hearsay objection is moot because the officer never gave hearsay testimony.

---

[10] See *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005).

[11] Although Farley also challenges the sufficiency of the evidence to show criminal attempt to commit arson in the first degree, which, as previously noted, the trial court merged into the offense of terroristic act, "we need not address the merits of [Farley's] enumeration of the general grounds addressing the verdict[ ] finding him guilty of [an] . . . offense[ ] . . . for which he was never convicted and sentenced." *Carter v. State*, 269 Ga. 420, 422 (2) (499 SE2d 63) (1998).

[12] OCGA § 16-11-37 (b) (3).

[13] OCGA § 24-3-1 (a) ("Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons."). See *Henley v. State*, 285 Ga. 500, 507 (5) (678 SE2d 884) (2009) (using information gained by police, a sergeant obtained telephone records and subscriber information to identify potential suspects; the sergeant's testimony was not hearsay because he "did not relay information told to him by other persons").

3. Farley claims the trial court erred in limiting his cross-examination of the responding officer. Again, we disagree.

As we noted above, the responding officer testified that Farley made an incriminating statement during the arrest indicating that he had "f—ed up" and had taken the gas can and poured gasoline on the deck. During the responding officer's direct testimony, defense counsel represented to the trial court that Farley did not challenge the admissibility of this statement, adding that "[i]t's a spontaneous statement."

On cross-examination, defense counsel asked the officer whether he was familiar with *Miranda*. The prosecutor objected on the ground that the question was irrelevant, and the trial court sustained the objection. Defense counsel then proposed asking the officer if he had read the *Miranda* rights to Farley. The prosecutor objected to the proposed question on the grounds that Farley's statement was spontaneous and that *Miranda* was not relevant. The trial court sustained that objection as well.

"The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him."[14] But that right is not violated where cross-examination "is limited by the trial court to relevant matters by proper questioning."[15] Because defense counsel represented to the trial court that Farley's statements were spontaneous, and this is consistent with the lack of evidence that Farley's incriminating statements were made as a result of custodial interrogation,[16] the trial court could properly conclude that Farley's *Miranda* rights were not a relevant issue.[17] "[T]he necessity of administering *Miranda* warnings exists only when the individual is *interrogated* while in custody. . . . No right exists to inquire into irrelevant matters, and consequently the trial court did not err by curtailing appellant's cross-examination on this matter."[18]

4. The trial court refused to allow Farley to recall Gipson, the responding officer, and Deonte Gipson to testify during the defense's

---

[14] OCGA § 24-9-64.

[15] *Johnson v. State*, 158 Ga. App. 333, 334 (280 SE2d 379) (1981).

[16] Farley now suggests that, but for the trial court's improper limitation of the officer's cross-examination, the evidence would have shown that he made the incriminating statements in response to police interrogation and that his constitutional rights were violated. He does not support this assertion.

[17] See *Barrett v. State*, 289 Ga. 197, 199 (1) (709 SE2d 816) (2011) ("A statement which is spontaneous and unsolicited as not made in response to any form of custodial interrogation is not bound by the strictures of *Miranda* and is admissible without the warnings having been given") (citation omitted).

[18] *Ramos v. State*, 198 Ga. App. 65, 66-67 (2) (400 SE2d 353) (1990) (citation and punctuation omitted; emphasis in original).

case-in-chief. Farley contends that the trial court therefore deprived him of his Sixth Amendment right to confront the witnesses against him. We disagree. Farley was afforded the opportunity to extensively cross-examine, and therefore confront, these witnesses.[19] Furthermore, "the trial court has the power to deny the recall of a witness who testified previously where the testimony to be given by the recalled witness would be repetitious of the witness'[s] earlier testimony."[20] Farley's counsel proffered the topics he intended to explore with the three witnesses on recall, but counsel had already thoroughly cross-examined the witnesses on these issues. Accordingly, the trial court did not abuse its discretion in denying Farley's request to recall the witnesses.[21]

5. Farley contends the trial court erred in failing to instruct the jury, consistent with OCGA § 24-3-53, that "[a]ll admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction."[22] But Farley did not submit a written request to make this charge.

> Generally, it is not reversible error for the trial court to fail to give a request to charge that is not submitted in writing by the complaining party. Such failure constitutes reversible error only where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence.[23]

So viewed, we cannot conclude that the failure to charge was

---

[19] See generally *State v. Vogleson*, 275 Ga. 637, 638 (1) (571 SE2d 752) (2002) ("[t]he main and essential purpose of the right of confrontation is to secure for the opponent the opportunity of cross-examination") (citation and punctuation omitted).

[20] *McMichael v. State*, 252 Ga. 305, 307 (313 SE2d 693) (1984).

[21] See *Smith v. State*, 261 Ga. App. 871, 875 (3) (583 SE2d 914) (2003).

[22] Id. Farley's previous trial on the indictment resulted in a verdict of not guilty of aggravated assault, and a mistrial on the charges of criminal attempt to commit arson in the first degree, terroristic act, and aggravated stalking. Farley argues that the written requests to charge submitted in his previous trial should "bind the trial court" in the second trial. He cites no authority for this proposition. Uniform Superior Court Rule 10.3 provides, in pertinent part, that requests to charge be submitted at the "commencement of trial, unless otherwise provided by pre-trial order; provided, however, that additional requests may be submitted to cover unanticipated points which arise thereafter." The trial court advised counsel that requests to charge needed to be resubmitted for purposes of this trial. We find no error in this decision.

[23] *Dunn v. State*, 289 Ga. App. 585, 587 (2) (657 SE2d 649) (2008) (citation and punctuation omitted). See *Hunt v. State*, 166 Ga. App. 524, 525 (2) (304 SE2d 576) (1983) ("[a]bsent a timely request, the trial court did not err in failing to charge on the evidentiary weight to be given admissions and confessions or in failing to charge that an uncorroborated confession is insufficient to support a conviction") (citations omitted).

reversible error. Farley's admissions were strongly corroborated by other testimony, including that of Deonte Gipson, who testified that he saw Farley pouring gasoline on and around the house and on the deck. Thus "any error in failing to give this charge is harmless, as the 'confession' was corroborated by other evidence."[24]

6. Last, we consider Farley's claim that he received ineffective assistance of trial counsel. Specifically, Farley contends that his trial counsel's performance was deficient because his trial counsel failed to timely investigate the crime scene, failed to object to the introduction into evidence of pictures of the crime scene, failed to properly retain witnesses, and failed to submit written jury instructions.

> To prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. We need not address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either prong.[25]

Further,

> [t]o establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.[26]

(a) Farley testified at the hearing on the motion for new trial that his trial counsel performed inadequately because counsel did not go to Gipson's property to talk to witnesses. He also contends that his counsel was deficient because he caused photographs of the crime scene to be taken on December 8, 2009, long after the incident. To the extent that Farley suggests that these two alleged failures show a more generalized lack of trial preparation and investigation by defense counsel, he failed at the hearing on the motion for new

---

[24] *Bowley v. State*, 261 Ga. 278, 281 (5) (404 SE2d 97) (1991).

[25] *Towry v. State*, 304 Ga. App. 139, 143 (2) (695 SE2d 683) (2010) (citations and punctuation omitted).

[26] *Brown v. State*, 288 Ga. 902, 907 (5) (708 SE2d 294) (2011) (citation and punctuation omitted).

trial to ask trial counsel about counsel's trial preparation or investigation,[27] or about his alleged failures in visiting the property or tardily arranging for the photographs. Without more, we cannot conclude that Farley overcame "the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct."[28] Further, Farley did not show he was prejudiced. Even if we assume that counsel was deficient in failing to go to the property to talk to possible witnesses, the existence and availability of witnesses favorable to the defense is, under this record, pure speculation.[29] Nor does Farley show that if his counsel had caused photographs of Gipson's yard to be taken closer to the date of the incident, there was a reasonable probability that the outcome of the trial would have differed.

(b) Farley claims that his counsel was deficient in not objecting to the state's introduction of photographs of the crime scene because, before the photographer took the pictures, the gas can and lighter had been moved from their original location and Gipson's yard had been sprayed with foam. "[T]his claim is waived because it was not raised either in the motion for new trial as amended or at the hearing thereon by appellate counsel . . . ."[30] Moreover, Farley does not show that the photographs, authenticated by Gipson and by the responding officer, were excludable upon objection.[31]

(c) Farley further claims his counsel was deficient in failing to retain, for purposes of recalling as witnesses, Gipson, Deonte Gipson, Cassandra Gipson, and the responding officer. Farley "was required to offer 'more than mere speculation' that [these witnesses] may have had evidence that would have assisted [his] case at trial."[32] He did not do so, and, therefore, Farley failed to show a reasonable probability that the results of the proceeding would have been different.[33]

(d) Farley also argues that his counsel was deficient in failing to

---

[27] The assistant district attorney did ask defense counsel if he felt he was adequately prepared for trial, and defense counsel indicated that he was prepared.

[28] *Morgan v. State*, 275 Ga. 222, 227 (5) (564 SE2d 192) (2002) (citation and punctuation omitted).

[29] See id.

[30] *Collier v. State*, 288 Ga. 756, 758 (3) (707 SE2d 102) (2011) (citation omitted).

[31] See, e.g., *Isaacs v. State*, 259 Ga. 717, 732 (26) (386 SE2d 316) (1989) ("[a]ny witness who is familiar with the scene depicted can authenticate the photograph; it is not necessary that the witness be the photographer or even that the witness have been present when the photograph was taken") (citation omitted); *Shaffer v. State*, 291 Ga. App. 783, 785 (1) (662 SE2d 864) (2008) (failure to make a meritless objection does not constitute ineffective assistance).

[32] *Dickens v. State*, 280 Ga. 320, 323 (2) (627 SE2d 587) (2006) (citation and punctuation omitted).

[33] Id.

submit a written request to charge the principles of OCGA § 24-3-53, which, as we noted above,[34] require that admissions be scanned with care, confessions of guilt received with great caution, and that a confession, uncorroborated by any other evidence, does not justify a conviction. Given the strength of the evidence, Farley does not show that, if his counsel had submitted a written request to charge, there was a reasonable probability the outcome of the trial would have differed.

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED MARCH 9, 2012.

*Deborah L. Leslie*, for appellant.

*Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney*, for appellee.